# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| RICKY COLLIER, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 1:07-0042 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Bryant |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| *Defendant*. ) | |

## ORDER

Pending before the Court is Plaintiff Ricky Collier's Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 13) and Defendant's Response (Doc. No. 17). Magistrate Judge Bryant has issued a Report and Recommendation ("Report") (Doc. No 18), to which Plaintiff has filed objections (Doc. No. 19). Upon review of the Magistrate Judge's Report and for the reasons stated below, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

## I. BACKGROUND

*A. Procedural Background*

Ricky Collier ("Plaintiff") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in June of 2000, alleging disability as a result of illiteracy

Case 1:07-cv-00042   Document 20   Filed 11/21/08   Page 1 of 11 PageID #: 129

beginning December 31, 1999. Upon review, the state agency designee of the Social Security Administration ("SSA") denied both applications on September 21, 2000 (Tr. 28-29, 252-53). Plaintiff did not pursue an appeal at that time.

On July 31, 2001, Plaintiff filed new DIB and SSI applications, again on account of illiteracy beginning December 31, 1999. (Tr. 62-65A, 92, 106, 259-62). Although the claim was initially denied on October 12, 2001 (Tr. 30-31, 263-64), Plaintiff requested additional consideration on account of his mental difficulties and an injured tailbone. (Tr. 132). Upon consideration, the state agency again denied Plaintiff's claims and notified him of his right to request a *de novo* hearing before an Administrative Law Judge ("ALJ") on March 11, 2002. (Tr. 46-47; 267-68). Plaintiff filed this request and appeared with counsel before the ALJ on October 16, 2003. Plaintiff and an impartial vocational expert gave testimony at the hearing. (Tr. 274-312). On January 6, 2004, the ALJ found Plaintiff not disabled and denied his pending applications for benefits. (Tr. 9-17).[1]

Following an unsuccessful appeal to the Administration's Appeals Council (Tr. 5-8), Plaintiff filed suit in this Court and obtained an agreed reversal of the SSA's decision with remand for further administrative proceedings from Magistrate Judge Bryant. (Tr. 344-45). After Magistrate Judge Bryant remanded the case, the ALJ held a second hearing on Plaintiff's claims on February 9, 2006. (Tr. 355-84). Appearing with counsel, Plaintiff and an impartial vocational expert offered testimony again. (Id.). Upon review, the ALJ issued a second decision on April 25, 2006 finding Plaintiff not disabled. (Tr. 324-38).

On June 6, 2007, Plaintiff filed this action to obtain judicial review of the Commissioner's final decision. (Doc. No. 1). The Court has jurisdiction under 42 U.S.C. § 405(g). On October 20,

---

[1] The decision is stamped January 6, 2003, but the "2003" date is a typographical error.

-2-

2008, Magistrate Judge Bryant recommended that Plaintiff's motion be denied. (Doc. No.18).

Plaintiff asserts four (4) objections to the Magistrate Judge's findings. (Doc. No. 19). Specifically, Plaintiff contends that (1) the ALJ erred in determining that Plaintiff's demeanor at the hearing was not credible; (2) the ALJ should have given more weight to Plaintiff's Global Assessment Functioning ("GAF") scores than to the consultive opinions of his non-treating examiners; (3) the February 9, 2006 hearing was not fair and impartial; and (4) the ALJ erred when concluding that absent drug abuse, Plaintiff's impairments would not be disabling. (Id.).

*B. Factual Background*

The Court adopts the medical background and testimonial evidence sections of Magistrate Judge Bryant's Report (Doc. No. 18 at 5-10).

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2008). However, this review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence shall be conclusive." 42 U.S.C. § 405(g) (2008). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the decision if it is supported by substantial evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such evidence as a reasonable mind would accept as adequate to support the conclusion." Richardson v. Pereles, 402 U.S. 389, 401 (1979). It is "more than a mere scintilla of

evidence, but less than a preponderance." Bell v. Comm'r, 105 F.3d 244, 245 (6th Cir. 1996) (citing Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." Her v. Comm'r, 203 F.3d 388, 389 (6th Cir. 1999); Crum v. Sullivan, 921 F.2d 642, 644 (1990) (citing Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993); Besaw v. Sec'y of Health and Human Servs., 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to a different factual conclusion as to the Plaintiff's claim on the merits than that of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. Hogg, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects to the ALJ's determination that Plaintiff was not credible at the hearing on February 9, 2006.*

Plaintiff contends that the ALJ's determination that Plaintiff's testimony regarding drug abstinence lacked credibility was in error. He argues that the ALJ incorrectly relied solely on his demeanor during the hearing to make the credibility determination, whereas the ALJ should have relied on medical evidence as well. (Doc. No. 19 at 2). Relying on a portion of Dr. Deborah Doineau's report, Plaintiff argues that he did not purposefully misrepresent his medical condition

during a medical examination. (Id. at 3). Plaintiff avers that because his medical records show that he was truthful during his examination with Dr. Doineau, the ALJ's finding that he lacked credibility at the hearing is flawed. (Id.).

Plaintiff's argument is mistaken; the ALJ did not rely solely on Plaintiff's demeanor at the hearing. The ALJ relied on (1) Plaintiff's demeanor while testifying at two hearings and on (2) thorough documentation from treating and non-treating sources who repeatedly observed Plaintiff during examinations. (Doc. No. 18, 14-15). As Plaintiff identified in his objection, this included Dr. Doineau's report stating that Plaintiff was truthful in an exam. (Doc. No. 19, 2-3) (citing Tr. 160). However, Dr. Mallipeddi, one of Plaintiff's treating physicians, noted that Plaintiff denied using drugs and alcohol when first asked, but then "admitted [that] he took his mom's Valium and drank one beer" when the doctor mentioned conducting a drug screening. (Tr. 233). Other examiners observed "plaintiff's apparent lack of candor, lack of effort on testing, and noncompliance with prescribed therapy and pharmacological treatment." (Tr. 330-33).

As such, the ALJ was confronted with contradicting evidence. It is within an ALJ's purview to discount "credibility to a certain degree . . . where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). Given the evidence before the ALJ, the Court concludes that substantial evidence exists in the record to support the ALJ's adverse credibility finding.

Plaintiff also argues that the Magistrate made an error in law when he relied on Jones v. Commissioner of Social Security, 336 F.3d 469 (6th Cir. 2003) to support the ALJ's position. Plaintiff argues that "Jones does not back up the Magistrate's finding." (Doc. No. 19, 2). However, Plaintiff does not clarify what he interprets Jones to mean. In Jones, the Sixth Circuit noted that the

reviewing court should "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which . . . [the reviewing court does] not, of observing a witness's demeanor while testifying." Jones, 336 F.3d at 476. In the instant case, the Magistrate gave great weight and deference to the ALJ's decision because the ALJ had an opportunity to observe Plaintiff while testifying, which the Magistrate did not. Accordingly, the Court finds that the Magistrate did not err when relying on Jones.

   B.   *Plaintiff objects to the ALJ's decision allegedly neglecting to give Plaintiff's Global Assessment Functioning ("GAF") scores more weight than the consultive opinions of non-treating physicians and consultive examiners.*

Plaintiff argues that the ALJ should have given his GAF scores greater consideration than the opinions of his non-treating physicians and examiners. Plaintiff further contends that the ALJ "totally disregarded the records from . . . the treating physicians," specifically records from Dr. Mallipeddi and Dr. Graves with the Centerstone Health Center where Plaintiff underwent treatment. (Doc. No. 18, 4-5). In his fact-finding role, an ALJ must evaluate each item of evidence in the record to determine its bearing upon a claimant's entitlement to benefits; this evaluation includes a determination with regard to credibility, weight, and persuasiveness of evidence. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 490 (6th Cir. 2006).

Instead of "disregarding" the records from Plaintiff's treating physicians, as Plaintiff suggests, the record shows that the ALJ thoroughly considered reports from them. Below are excerpts from the record illustrating as much.

> The claimant has received mental health treatment from Centerstone Mental Health since October 2001. He has started and stopped treatment 3 times and has been noncompliant with taking medications as prescribed and keeping appointments. His treating psychiatrists have been M. Mallipeddi, M.D., and James Graves, M.D. Dr. Mallipeddi . . . indicated that the claimant had asserted no drug use for six months,

-6-

> but had stopped coming to treatment when unscheduled drug screening (UDS) was ordered. His diagnoses were for dysthymia, cannabis abuse with cannabis induced psychosis and an antisocial personality disorder . . . . Centerstone [GAF] ratings from October 2001 through September 2003 were consistently in the range of 40-50 . . . GAF of 50 and below indicates 'serious symptoms' that would typically preclude work. Thus, the GAF ratings were just as low when the claimant alleged abstinence from DA/A as when it was ongoing, as was strongly suggested by his cessation of treatment upon the institution of drug abuse monitoring. [Claimant] came to see Dr. Graves on June 24, 2004. Dr. Graves' note reports a 'diffuse picture of low grade symptoms.' He received a renewal prescription for Lexapro . . . . The claimant then proceeded to skip the next 4 appointments in a row (July 8, and August 9, 23 and 30, 2004) . . . With regard to activities of daily living (ADLs), Dr. Graves noted that he 'claims to be too insecure and paranoid to get public work; probably can do more if he tries harder, keeps up personal ADLs.' . . . . However, what the clear weight of . . . the other Centerstone CRGs shows is that DA/A, primarily in the form of persistent cannabis abuse, materially contributed to any mental functional limitations assessed.

(Tr. 331-32).

The record also shows that the ALJ considered Plaintiff's multiple GAF scores when determining whether Plaintiff was disabled under the framework of Medical-Vocational Rule 202.19. (Tr. 331). The ALJ concluded that Plaintiff's "GAF ratings in the 40-50 range included mental functional deficits materially resulting from" drug abuse and alcoholism. (Id.). While the ALJ did not specify the weight given to each item of evidence, the Report shows that the ALJ thoroughly considered Plaintiff's medical records, including GAF scores and reports from treating and non-treating examiners. (Tr. 330-36). Thus, the Court finds that substantial evidence exists to support the ALJ's finding.

  C.  *Plaintiff objects to the February 9, 2006 hearing because it was not fair or impartial.*

Plaintiff argues that his hearing held on February 9, 2006 before the ALJ was not fair and impartial because the ALJ, in his April 25, 2006 decision stated:

However, appeal to the United States District Court was successful, with a remand

> order issued on May 23, 2005, upon a request for voluntary remand. Ex. 6A. The AC issued its order remanding the case for a new hearing on June 6, 2005. The only instruction in the remand is to obtain new VE testimony complying with SSR 00-4p. Ex. 7A. As explained before, a thorough review of the transcript of the prior hearing and the test of the SSR would have confirmed that SSR 00-4p was appropriately complied with at that time.

(Doc. No. 19, 6) (citing Tr. 327). Plaintiff presents no other evidence nor offers an interpretation of the abovementioned quotation to support his argument. Instead, he states generally that the ALJ"s written decision reveals that the ALJ made up his mind on the case prior to the hearing held on February 9, 2006. (Doc. No. 19, 6).

The ALJ was correct in his April 2006 decision with regard to the issues before the ALJ on remand from the District Court. In the document entitled "Remanding Case to Administrative Law Judge," from June 6, 2005, the Appeals Council states that on remand, the ALJ "will obtain additional vocational evidence concerning the existence of jobs in the national economy" as well as "ask the vocational expert whether the testimony is consistent with the Dictionary of Occupational Titles pursuant to Social Security Ruling 00-4p." (Tr. 320). The ALJ's reference in his April 25, 2006 decision to the issues remanded does not reveal any unfairness or partiality concerning the February 9, 2006 hearing.

Similarly, the ALJ's statement in the April 2006 decision that a review of the October 16, 2003 hearing's transcript shows that the "SSR 00-4p was appropriately complied with" does not reveal that the February 2006 hearing was unfair or partial. Presumably, the ALJ was referring to a line of questioning during the October 2003 hearing in which the ALJ asked the VE: "You're testifying in accordance with the Dictionary of Occupational Titles, DOT?" Response: "Yes, sir." (Tr. 279). It appears that the ALJ believed that line of questioning in October 2003 fulfilled the SSR

Case 1:07-cv-00042   Document 20   Filed 11/21/08   Page 8 of 11 PageID #: 136

00-4p requirement, however, that presumed belief did not stop the ALJ from asking the VE at the February 2006 hearing "[y]ou're testifying in accordance with the Dictionary of Occupational Titles, DOT?" Response: "Yes, Your Honor." (Tr. 360). After reviewing the ALJ's April 2006 decision as well as the transcripts from both the October 2003 and February 2006 hearings, the Court does not find any evidence of unfairness or partiality at the February 2006 hearing.

Furthermore, Plaintiff fails to point to any portion of the hearing transcript that supports his argument that the hearing was not fair and impartial. The record shows that Plaintiff appeared in person before Donald Garrison, the ALJ and was represented by counsel, J. Daniel Freeman. (Tr. 357). Also present was Karen Vessell, a vocational expert. (Id.). Mr. Freeman made an objection to a document labeled, "psychological assessment," which the judge made note of. (Tr. 359). The ALJ swore in the VE who gave testimony on the record regarding Plaintiff's past relevant work; Mr. Freeman made no objection. (Tr. 360). The ALJ then elicited testimony from the Plaintiff, soliciting information about his medication, history of depression, and illiteracy. (Tr. 360-63). Mr. Freeman questioned Plaintiff about mowing his mother's lawn, repairing engines, depression, and medication. (Tr. 363-66). The hearing continued in a similar fashion with both the ALJ and Mr. Freeman questioning Plaintiff and the VE. (Tr. 366-384). Again, the Court finds no evidence of unfairness or partiality at the February 9, 2006 hearing. Therefore, there is substantial evidence in the record to support the ALJ's finding.

> D. *Plaintiff objects to the ALJ's finding that without Plaintiff's drug abuse, Plaintiff's impairments would not be disabling.*

Plaintiff argues that the ALJ incorrectly relied on the Vocational Expert's ("VE") answer to a hypothetical question regarding whether or not Plaintiff's impairments would be disabling if he

-9-

ceased abusing drugs: the VE testified that if Plaintiff stopped using drugs, he could preform work. (Doc. No. 19, 7). Plaintiff further contends that the VE was not qualified to make such an assessment. (Id.) However, case law illustrates that a VE is qualified to make such an assessment. Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 596 (6th Cir. 2005) (stating that administrative law judge may rely on a vocational expert's response to a hypothetical question that includes factually relevant information from the case). As such, the Court finds that the ALJ did not err in relying on the VE's response to the hypothetical question which correctly incorporated facts in the record relating to Plaintiff's history of drug abuse.

Furthermore, there is substantial evidence in the record that supports the ALJ's finding that but for Plaintiff's drug abuse, he would not be disabled. In May of 2002, Dr. Mallipeddi, Plaintiff's treating physician, noted that Plaintiff admitted drug use (taking his mother's Valium and drinking beer) only after the doctor mentioned conducting an unscheduled drug screening. (Tr. 233). Dr. Mallipeddi also attributed Plaintiff's psychosis to cannabis abuse in a report from October of 2002. (Tr. 243). In September 2003 a treating physician at Centerstone gave Plaintiff a diagnosis of alcohol and cannabis abuse. (Tr. 426). In sum, Dr. McFerrin explained in his report from August 7, 2005 that Plaintiff "would be more amenable to unskilled labor and motivation[;] interest and energy should improve from abstinence from the sedating and mood-altering chemicals," which Dr. McFerrin noted elsewhere in the report included cannabis and medications Plaintiff took from his family members. (Tr. 406-07).

IV. CONCLUSION

For these reasons, this Court finds that Magistrate Judge Bryant's Report is well-founded and

-10-

supported by the record, and therefore **ADOPTS** it in its entirety.  Accordingly, Plaintiff's Motion is **DENIED**.

It is so ORDERED.

Entered this the 21st day of November, 2008

*[signature]*
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-11-